UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

GARY S.,[1]

      **Plaintiff,**

v.

MARTIN J. O'MALLEY,
**Commissioner of Social Security,**

      **Defendant.**

Case No. 2:21-cv-20499
Magistrate Judge Norah McCann King

## OPINION AND ORDER

This matter comes before the Court pursuant to Section 205(g) of the Social Security Act, as amended, 42 U.S.C. § 405(g), regarding the applications of Plaintiff Gary S. for Disability Insurance Benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401 *et seq.*, and for Supplemental Security Income under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381 *et seq*. Plaintiff appeals from the final decision of the Commissioner of Social Security denying those applications.[2] After careful consideration of the entire record, including the entire administrative record, the Court decides this matter pursuant to Rule 78(b) of the Federal Rules of Civil Procedure. For the reasons that follow, the Court the Court reverses the Commissioner's decision and remands the matter for further proceedings.

---

[1] The Committee on Court Administration and Case Management of the Judicial Conference of the United States has recommended that, due to significant privacy concerns in social security cases, federal courts should refer to plaintiffs in such cases by only their first names and last initials. *See also* D.N.J. Standing Order 2021-10.

[2] Martin J. O'Malley, Commissioner of Social Security, is substituted as Defendant in his official capacity. *See* Fed. R. Civ. P. 25(d).

1

I.     PROCEDURAL HISTORY

Plaintiff filed his applications for disability insurance benefits and supplemental security income on September 27, 2017, and November 21, 2017, respectively, alleging that he has been disabled since May 29, 2012. R. 104, 124, 144, 166, 347–82. The applications were denied initially and upon reconsideration. R. 190–95, 199–204. Plaintiff sought a *de novo* hearing before an administrative law judge ("ALJ"). R. 205–06. ALJ Peter R. Lee held a hearing in January 2021, at which Plaintiff, who was represented by counsel, testified, as did a vocational expert. R. 56–103. In a decision dated May 4, 2021, the ALJ concluded that Plaintiff was not disabled within the meaning of the Social Security Act from May 29, 2012, Plaintiff's alleged disability onset date, through the date of that decision. R. 34–47. That decision became final when the Appeals Council declined review on November 18, 2021. R. 1–6. Plaintiff timely filed this appeal pursuant to 42 U.S.C. § 405(g). ECF No. 1. On May 12, 2022, Plaintiff consented to disposition of the matter by a United States Magistrate Judge pursuant to 28 U.S.C. § 636(c) and Rule 73 of the Federal Rules of Civil Procedure. ECF No. 12.[3] On May 13, 2022, the case was reassigned to the undersigned. ECF No. 13. The matter is ripe for disposition.

II.    LEGAL STANDARD

   A.     Standard of Review

In reviewing applications for Social Security disability benefits, this Court has the authority to conduct a plenary review of legal issues decided by the ALJ. *Knepp v. Apfel*, 204 F.3d 78, 83 (3d Cir. 2000).  In contrast, the Court reviews the ALJ's factual findings to determine if they are supported by substantial evidence. *Sykes v. Apfel*, 228 F.3d 259, 262 (3d

---

[3]The Commissioner has provided general consent to Magistrate Judge jurisdiction in cases seeking review of the Commissioner's decision. *See* Standing Order In re: Social Security Pilot Project (D.N.J. Apr. 2, 2018).

Cir. 2000); *see also* 42 U.S.C. §§ 405(g), 1383(c)(3). The United States Supreme Court has explained this standard as follows:

> Under the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains sufficien[t] evidence to support the agency's factual determinations. And whatever the meaning of substantial in other contexts, the threshold for such evidentiary sufficiency is not high. Substantial evidence, this Court has said, is more than a mere scintilla. It means – and means only – such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.

*Biestek v. Berryhill*, 139 S.Ct. 1148, 1154 (2019) (internal citations and quotation marks omitted); *see also Pierce v. Underwood*, 487 U.S. 552, 565 (1988) (citation and internal quotations omitted); *Bailey v. Comm'r of Soc. Sec.*, 354 F. App'x 613, 616 (3d Cir. 2009) (citations and quotations omitted); *K.K. ex rel. K.S. v. Comm'r of Soc. Sec.*, No. 17-2309, 2018 WL 1509091, at *4 (D.N.J. Mar. 27, 2018).

The substantial evidence standard is a deferential standard, and the ALJ's decision cannot be set aside merely because the Court "acting de novo might have reached a different conclusion." *Hunter Douglas, Inc. v. NLRB*, 804 F.2d 808, 812 (3d Cir. 1986); *see, e.g.*, *Fargnoli v. Massanari*, 247 F.3d 34, 38 (3d Cir. 2001) ("Where the ALJ's findings of fact are supported by substantial evidence, we are bound by those findings, even if we would have decided the factual inquiry differently.") (citing *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999)); *K.K.*, 2018 WL 1509091, at *4 ("'[T]he district court ... is [not] empowered to weigh the evidence or substitute its conclusions for those of the fact-finder.'") (quoting *Williams v. Sullivan*, 970 F.2d 1178, 1182 (3d Cir. 1992)).

Nevertheless, the Third Circuit cautions that this standard of review is not "a talismanic or self-executing formula for adjudication." *Kent v. Schweiker*, 710 F.2d 110, 114 (3d Cir. 1983) ("The search for substantial evidence is thus a qualitative exercise without which our review of

3

social security disability cases ceases to be merely deferential and becomes instead a sham."); *see Coleman v. Comm'r of Soc. Sec.*, No. 15-6484, 2016 WL 4212102, at *3 (D.N.J. Aug. 9, 2016). The Court has a duty to "review the evidence in its totality" and "take into account whatever in the record fairly detracts from its weight." *K.K.*, 2018 WL 1509091, at *4 (quoting *Schonewolf v. Callahan*, 972 F. Supp. 277, 284 (D.N.J. 1997) (citations and quotations omitted)); *see Cotter v. Harris*, 642 F.2d 700, 706 (3d Cir. 1981) (stating that substantial evidence exists only "in relationship to all the other evidence in the record"). Evidence is not substantial if "it is overwhelmed by other evidence," "really constitutes not evidence but mere conclusion," or "ignores, or fails to resolve, a conflict created by countervailing evidence." *Wallace v. Sec'y of Health & Human Servs.*, 722 F.2d 1150, 1153 (3d Cir. 1983) (citing *Kent*, 710 F.2d at 114); *see K.K.*, 2018 WL 1509091, at *4. The ALJ's decision thus must be set aside if it "did not take into account the entire record or failed to resolve an evidentiary conflict." *Schonewolf*, 972 F. Supp. at 284-85 (citing *Gober v. Matthews*, 574 F.2d 772, 776 (3d Cir. 1978)).

Although an ALJ is not required "to use particular language or adhere to a particular format in conducting [the] analysis," the decision must contain "sufficient development of the record and explanation of findings to permit meaningful review." *Jones v. Barnhart*, 364 F.3d 501, 505 (3d Cir. 2004) (citing *Burnett v. Comm'r of Soc. Sec.*, 220 F.3d 112, 119 (3d Cir. 2000)); *see K.K.*, 2018 WL 1509091, at *4. The Court "need[s] from the ALJ not only an expression of the evidence s/he considered which supports the result, but also some indication of the evidence which was rejected." *Cotter*, 642 F.2d at 705-06; *see Burnett*, 220 F.3d at 121 ("Although the ALJ may weigh the credibility of the evidence, [s/]he must give some indication of the evidence which [s/]he rejects and [the] reason(s) for discounting such evidence.") (citing *Plummer v. Apfel*, 186 F.3d 422, 429 (3d. Cir. 1999)). "[T]he ALJ is not required to supply a

4

comprehensive explanation for the rejection of evidence; in most cases, a sentence or short paragraph would probably suffice." *Cotter v. Harris*, 650 F.2d 481, 482 (3d Cir. 1981). Absent such articulation, the Court "cannot tell if significant probative evidence was not credited or simply ignored." *Id.* at 705. As the Third Circuit explains:

> Unless the [ALJ] has analyzed all evidence and has sufficiently explained the weight [s/]he has given to obviously probative exhibits, to say that [the] decision is supported by substantial evidence approaches an abdication of the court's duty to scrutinize the record as a whole to determine whether the conclusions reached are rational.

*Gober*, 574 F.2d at 776; *see Schonewolf*, 972 F. Supp. at 284-85.

Following review of the entire record on appeal from a denial of benefits, the Court can enter "a judgment affirming, modifying, or reversing the decision of the [Commissioner], with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). Remand is appropriate if the record is incomplete or if the ALJ's decision lacks adequate reasoning or contains illogical or contradictory findings. *See Burnett*, 220 F.3d at 119-20; *Podedworny v. Harris*, 745 F.2d 210, 221-22 (3d Cir. 1984). Remand is also appropriate if the ALJ's findings are not the product of a complete review which "explicitly weigh[s] all relevant, probative and available evidence" in the record. *Adorno v. Shalala*, 40 F.3d 43, 48 (3d Cir. 1994) (internal quotation marks omitted); *see A.B. on Behalf of Y.F. v. Colvin*, 166 F. Supp.3d 512, 518 (D.N.J. 2016). A decision to "award benefits should be made only when the administrative record of the case has been fully developed and when substantial evidence on the record as a whole indicates that the claimant is disabled and entitled to benefits." *Podedworny*, 745 F.2d at 221-22 (citation and quotation omitted); *see A.B.*, 166 F. Supp.3d at 518.

5

### B. Sequential Evaluation Process

The Social Security Act establishes a five-step sequential evaluation for determining whether a plaintiff is disabled within the meaning of the statute. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). "The claimant bears the burden of proof at steps one through four, and the Commissioner bears the burden of proof at step five." *Smith v. Comm'r of Soc. Sec.*, 631 F.3d 632, 634 (3d Cir. 2010) (citing *Poulos v. Comm'r of Soc. Sec.*, 474 F.3d 88, 92 (3d Cir. 2007)).

At step one, the ALJ determines whether the plaintiff is currently engaged in substantial gainful activity. 20 C.F.R. §§ 404.1520(b), 416.920(b). If so, then the inquiry ends because the plaintiff is not disabled.

At step two, the ALJ decides whether the plaintiff has a "severe impairment" or combination of impairments that "significantly limits [the plaintiff's] physical or mental ability to do basic work activities[.]" 20 C.F.R. §§ 404.1520(c), 416.920(c). If the plaintiff does not have a severe impairment or combination of impairments, then the inquiry ends because the plaintiff is not disabled. Otherwise, the ALJ proceeds to step three.

At step three, the ALJ decides whether the plaintiff's impairment or combination of impairments "meets" or "medically equals" the severity of an impairment in the Listing of Impairments ("Listing") found at 20 C.F.R. § 404, Subpart P, Appendix 1. 20 C.F.R. §§ 404.1520(d), 416.920(d). If so, then the plaintiff is presumed to be disabled if the impairment or combination of impairments has lasted or is expected to last for a continuous period of at least 12 months. *Id.* at §§ 404.1509, 416.909. Otherwise, the ALJ proceeds to step four.

At step four, the ALJ must determine the plaintiff's residual functional capacity ("RFC") and determine whether the plaintiff can perform past relevant work. 20 C.F.R. §§ 404.1520(e),

(f), 416.920(e), (f). If the plaintiff can perform past relevant work, then the inquiry ends because the plaintiff is not disabled. Otherwise, the ALJ proceeds to the final step.

At step five, the ALJ must decide whether the plaintiff, considering the plaintiff's RFC, age, education, and work experience, can perform other jobs that exist in significant numbers in the national economy. 20 C.F.R. §§ 404.1520(g), 416.920(g). If the ALJ determines that the plaintiff can do so, then the plaintiff is not disabled. Otherwise, the plaintiff is presumed to be disabled if the impairment or combination of impairments has lasted or is expected to last for a continuous period of at least twelve months.

### III.     ALJ DECISION AND APPELLATE ISSUES

Plaintiff was 39 years old on May 29, 2012, his alleged disability onset date. R. 46. At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity between that date and the date of the decision. R. 36. Plaintiff met the insured status requirements of the Social Security Act through December 31, 2017. *Id*.

At step two, the ALJ found that Plaintiff suffered from the following severe impairments: status post-left tibial plateau fracture, status-post right ankle fracture, chronic obstructive pulmonary disease ("COPD"), asthma, obesity, diabetes mellitus, bipolar disorder, and anxiety disorder. R. 37. The ALJ also found that mild intellectual disorder, history of alcohol dependence disorder, gastroesophageal reflux disease ("GERD"), Crohn's disease, gastritis, and sleep apnea were not severe. R. 37–38.

At step three, the ALJ found that Plaintiff did not suffer an impairment or combination of impairments that met or medically equaled the severity of any Listing. R. 38–41.

At step four, the ALJ found that Plaintiff had the RFC to perform light work subject to various additional limitations. R. 41–46. The ALJ also found that this RFC did not permit the

performance of Plaintiff's past relevant work as a sign maker. R. 46.

At step five and relying on the testimony of the vocational expert, the ALJ found that a significant number of jobs–*e.g.*, jobs as an injection molder, a small products assembler, and an electronics sub-assembler–existed in the national economy and could be performed by Plaintiff. R. 46–47. The ALJ therefore concluded that Plaintiff was not disabled within the meaning of the Social Security Act from May 29, 2012, his alleged disability onset date, through the date of the decision. R. 47.

Plaintiff disagrees with the ALJ's findings at steps four and five and asks that the decision of the Commissioner be reversed and remanded for further proceedings. *Plaintiff's Brief,* ECF No. 15; *Plaintiff's Reply Brief*, ECF No. 20. The Commissioner takes the position that her decision should be affirmed in its entirety because the ALJ's decision correctly applied the governing legal standards, reflected consideration of the entire record, and was supported by sufficient explanation and substantial evidence. *Defendant's Brief Pursuant to Local Civil Rule 9.1*, ECF No. 19.

### IV.  SUMMARY OF RELEVANT MEDICAL EVIDENCE

On January 3, 2018, Kim Arrington, Psy.D., conducted a consultative psychological examination. R. 694–97. Plaintiff reported a remote history of opioid abuse, current periodic use of cannabis, and two arrests for DUI. R. 695. On clinical examination, Dr. Arrington noted as follows:

> On examination, the claimant's demeanor and responsiveness to questions were cooperative. His manner of relating, social skills, and overall presentation were adequate. Appearance: The claimant appeared his stated age. He was dressed casually. Hygiene and grooming were fair. Gait and posture were normal. Motor behavior was normal. Eye contact was appropriate. Speech: The claimant's speech intelligibility was fluent. The quality of his voice was clear. Expressive and receptive language were adequate. Thought Processes: The claimant's thought processes were coherent and goal directed with no evidence of hallucinations,

> delusions, or paranoia in the evaluation…. Affect: The claimant's affect was depressed. Claimant's mood was dysthymic…. Orientation: He was oriented x3. Attention and concentration: The claimant's attention and concentration were intact. He was able to do counting, simple calculations, and serial 7's. Recent and Remote Memory Skills: The claimant's recent and remote memory skills were mildly impaired possibly due to depression. He was able to recall 3/3 objects immediately and 2/3 objects after 5 minutes. He was able to repeat back 4 digits forward and 3 digits backward. Cognitive Functioning: The claimant's intellectual functioning is estimated to be in the average range. His general fund of information is appropriate to his experience. Insight: The claimant's insight is fair. Judgment: The claimant's judgment ranges from fair to poor due to mood fluctuations.

R. 695–96. Dr. Arrington provided the following medical source statement based on this examination:

> With regard to the daily functioning of the claimant, he is able to follow and understand simple directions and instructions. He will struggle with performing simple tasks due to low motivation. He is able to maintain attention and concentration. *He will have difficulty learning new tasks and performing complex tasks due to problems with memory and low motivation. He will have difficulty maintaining a regular schedule due to anxiety and mood fluctuations. His difficulties appear attributable to mood fluctuations and anxiety.* The results of the present evaluation appear to be consistent with psychiatric problems, which may significantly interfere with the claimant's ability to function on a daily basis.

R. 696 (emphasis added). Dr. Arrington's impression was bipolar 2 disorder; alcohol use disorder, in remission; opioid use disorder, in remission; cannabis use disorder, mild; generalized anxiety disorder, rule out posttraumatic stress disorder. R. 696. Plaintiff's prognosis was guarded. R. 697.

On June 15, 2018, Dr. Arrington conducted a second consultative psychological examination. R. 730–32.

> On examination, the claimant's demeanor and responsiveness to questions were cooperative. His manner of relating, social skills, and overall presentation were adequate. Appearance: The claimant appeared his stated age. He was dressed casually. Hygiene and grooming were fair. He used a cane for walking. Motor behavior was normal. Eye contact was good. Speech: The claimant's speech intelligibility was fluent. The quality of his voice was clear. Expressive and receptive language were adequate. Thought Processes: The claimant's thought processes were coherent and goal directed with no evidence of hallucinations,

9

>delusions, or paranoia in the evaluation setting. Affect: The claimant's affect was depressed. Mood: The claimant's mood was dysthymic. Sensorium: His sensorium was clear. Orientation: He was oriented to person and location of the assessment. He struggled with the date. He did not know the year, but he reported it was July. He did not know the day of the month or the day of the week. Attention and concentration: The claimant's attention and concentration were intact. He was able to do counting, simple calculations, and serial 7's. Recent and Remote Memory Skills: The claimant's recent and remote memory skills were mildly impaired possibly due to depression. He was able to recall 3/3 objects immediately and 2/3 objects after 5 minutes. He was able to repeat back 4 digits forward and 4 digits backward. Cognitive Functioning: The claimant's intellectual functioning is estimated to be in the average range. His general fund of information is appropriate to his experience. Insight: The claimant's insight is fair: Judgment: The claimant's judgment is fair. Mode of living: On a daily basis. The claimant is missing days of dressing, bathing, and grooming due to low motivation. He is not helping out with household chores due to low motivation. He reports he is not able to manage his own money due to difficulty keeping track of it. He reported "my wife always did that." The claimant is unable to travel independently due to anxiety. He is able to read and has basic computer skills. He has no current hobbies or interests.

R. 731–32. Dr. Arrington provided the following medical source statement based on this examination:

>With regard to the daily functioning of the claimant, he is able to follow and understand simple directions and instructions. *He will struggle with performing simple tasks due to low motivation. He is able to maintain attention and concentration. He will have difficulty learning new tasks and performing complex tasks due to mild difficulty with memory and problems with motivation. He would not be able to maintain a regular schedule due to anxiety. His difficulties appear attributable to depression and anxiety.* The results of the present evaluation appear to be consistent with psychiatric problems, which may significantly interfere with the claimant's ability to function on a daily basis.

R. 732 (emphasis added). Dr. Arrington's impression was major depressive disorder, generalized anxiety disorder, alcohol disorder in remission, rule out posttraumatic stress disorder. *Id*. Plaintiff's prognosis was guarded. *Id*.

V.   **DISCUSSION**

Plaintiff argues that substantial evidence does not support the ALJ's mental RFC determination. *Plaintiff's Brief*, ECF No. 15, pp. 18–25; *Plaintiff's Reply Brief*, ECF No. 20, pp.

1–4. For the reasons that follow, this Court concludes that substantial evidence does not support the ALJ's mental RFC determination, but for reasons different than those raised by Plaintiff. *Cf. Jennings o/b/o Thomas v. Saul*, No. CV 20-1953, 2021 WL 601097, at *2-3 (E.D. Pa. Feb. 16, 2021), *reconsideration denied sub nom. Jennings o/b/o Thomas v. Saul*, No. CV 20-1953, 2021 WL 1175134 (E.D. Pa. Mar. 29, 2021) ("This unexplained mistake is a clear, reversible error that this court has addressed *sua sponte*.") (citations omitted); *McNeal v. Comm'r of Soc. Sec.*, No. CIV.A. 10-318-J, 2012 WL 1038898, at *3 (W.D. Pa. Mar. 28, 2012) ("The Court does not reach any of the issues raised by Plaintiff but finds that remand is warranted on grounds not raised by the parties.").

An ALJ must evaluate all record evidence in making a disability determination. *Plummer,* 186 F.3d at 433; *Cotter,* 642 F.2d at 704. The ALJ's decision must include "a clear and satisfactory explication of the basis on which it rests" sufficient to enable a reviewing court "to perform its statutory function of judicial review." *Cotter*, 642 F.2d at 704–05. Specifically, the ALJ must discuss the evidence that supports the decision, identify the evidence that the ALJ rejected, and explain why the ALJ accepted some evidence but rejected other evidence. *Id*. at 705–06; *Diaz v. Comm'r of Soc. Sec.*, 577 F.3d 500, 505–06 (3d Cir. 2009); *Fargnoli v. Massanari*, 247 F.3d 34, 42 (3d Cir. 2001) ("Although we do not expect the ALJ to make reference to every relevant treatment note in a case . . . we do expect the ALJ, as the factfinder, to consider and evaluate the medical evidence in the record consistent with his responsibilities under the regulations and case law."). Without this explanation, "the reviewing court cannot tell if significant probative evidence was not credited or simply ignored." *Cotter*, 642 F.2d at 705; *see also Burnett,* 220 F.3d at 121 (citing *Cotter*, 642 F.2d at 705).

11

A claimant's RFC is the most that the claimant can do despite his limitations. 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1). At the administrative hearing stage, it is the ALJ who is charged with determining the claimant's RFC. 20 C.F.R. §§ 404.1546(c), 416.946(c); *see also Chandler v. Comm'r of Soc. Sec.*, 667 F.3d 356, 361 (3d Cir. 2011) ("The ALJ—not treating or examining physicians or State agency consultants—must make the ultimate disability and RFC determinations.") (citations omitted). When determining a claimant's RFC, an ALJ has a duty to consider all the evidence. *Plummer*, 186 F.3d at 429. However, the ALJ need include only "credibly established" limitations. *Rutherford v. Barnhart*, 399 F.3d 546, 554 (3d Cir. 2005); *see also Zirnsak v. Colvin*, 777 F.3d 607, 615 (3d Cir. 2014) (stating that the ALJ has discretion to choose whether to include "a limitation [that] is supported by medical evidence, but is opposed by other evidence in the record" but "[t]his discretion is not unfettered—the ALJ cannot reject evidence of a limitation for an unsupported reason" and stating that "the ALJ also has the discretion to include a limitation that is not supported by any medical evidence if the ALJ finds the impairment otherwise credible").

In the case presently before the Court, the ALJ found that Plaintiff had the RFC to perform a limited range of light work:

> After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform less than the full range of light work. He can lift/carry 20 pounds occasionally and 10 pounds frequently. During an eight-hour workday, he can sit for six hours and stand/walk for six hours. He can never climb ladders/ropes/scaffolds or crawl. He can occasionally climb stairs/ramps, kneel, stoop, crouch, or balance. He can never be exposed to unprotected heights or hazardous machinery. He can never have exposure to extremes in environmental conditions or concentrated pulmonary irritants. He must work in a location with accessible restroom facilities. He can have occasional contact with supervisors, coworkers, and the public. He can do only simple and routine tasks.

R. 41. In making this determination, the ALJ considered Dr. Arrington's opinions as follows:

> At the consultative examinations performed by Kim Arrington Psy.D. in January 2018 and June 2018, the claimant was cooperative and exhibited adequate[] social skills (Exhibits 12F, 16F). Dr. Arrington indicated that the claimant had a depressed affect with mildly impaired memory skills; however, he did not exhibit abnormalities with regard to motor behavior, speech, or thought process. Although the claimant struggled with identifying the date and exhibited poor to fair judgement, he demonstrated intact attention/concentration and average intellectual functioning.
>
> According to Dr. Arrington, the claimant would have difficulty learning new tasks and performing complex tasks but that he could follow/understand simple instructions (Exhibits 12F, 16F. *Although Dr. Arrington noted that the claimant would struggle with performing simple tasks and maintaining a regular schedule, she attributed this to his low motivation.* . . .
>
> I am persuaded by the assessments of Dr. Arrington . . . who generally indicate[s] the claimant retains the ability to perform simple tasks despite some moderate work-related mental restrictions.

R. 44–45 (emphasis added).

The ALJ expressly attributed Plaintiff's struggle with maintaining a regular schedule to his "low motivation." The ALJ omitted from the RFC any limitation in Plaintiff's ability to maintain a regular schedule. R. 41, 45. However, as previously detailed, Dr. Arrington specifically attributed Plaintiff's limitation in his ability to maintain a regular schedule to his psychiatric problems, including his mood fluctuations, anxiety, and depression—not to low motivation. R. 696 ("He will have difficulty maintaining a regular schedule due to anxiety and mood fluctuations. His difficulties appear attributable to mood fluctuations and anxiety. The results of the present evaluation appear to be consistent with psychiatric problems, which may significantly interfere with the claimant's ability to function on a daily basis."), 732 ("He would not be able to maintain a regular schedule due to anxiety. His difficulties appear attributable to depression and anxiety. The results of the present evaluation appear to be consistent with psychiatric problems, which may significantly interfere with the claimant's ability to function on a daily basis.").

13

Substantial evidence does not support an ALJ's decision when it relies on a mischaracterization of the evidence. *See Sutherland v. Comm'r Soc. Sec.*, 785 F. App'x 921, 928 (3d Cir. 2019) ("[T]he ALJ still may choose whom to credit but 'cannot reject evidence for no reason or the wrong reason.'") (quoting *Morales*, 225 F.3d at 317); *cf. Cotter*, 642 F.2d at 706–07 ("Since it is apparent that the ALJ cannot reject evidence for no reason or for the wrong reason, . . . [A]n explanation from the ALJ of the reason why probative evidence has been rejected is required so that a reviewing court can determine whether the reasons for rejection were improper.") (internal citation omitted); *DeJesus v. Kijakazi*, No. 20-CV-06115-RAL, 2022 WL 1062914, at *10 (E.D. Pa. Apr. 8, 2022) ("By dismissing Dr. Kingry's opinion through conclusory statements, mischaracterizations of record evidence, lay opinions, and failure to resolve contradictory evidence, the ALJ's conclusion does not survive scrutiny even under the less restrictive 2017 regulations. A remand is warranted."); *Murphy v. Comm'r of Soc. Sec.*, No. 1:19-CV-20122, 2020 WL 7022746, at *6 (D.N.J. Nov. 30, 2020) ("The ALJ's reliance on this misconception, along with other unsupported mischaracterizations of Plaintiff's physical abilities . . . permeates the ALJ's decision. As stated above, these errors cannot be separated from the ALJ's analysis of other record evidence such that the Court may determine whether substantial evidence supports the ALJ's RFC analysis."). Notably, this Court has previously remanded an action where the ALJ mischaracterized Dr. Arrington's opinion regarding a claimant's limitations, when that ALJ wrongfully attributed those limitations to low motivation and then eliminated those limitations from the RFC. *See Hernandez v. Saul*, No. 2:18-CV-10297, 2020 WL 13836620, at *7–8 (D.N.J. May 4, 2020) (remanding action where the ALJ "expressly eliminated limitations resulting from Plaintiff's low motivation because her low motivation 'seems to be independent of the claimant's impairment[.]' R. 50. However, as previously

14

detailed, Dr. Arrington specifically attributed Plaintiff's difficulties to her psychiatric problems, including depression and anxiety"). Moreover, the ALJ's error in this regard is not harmless where, as here, the vocational expert testified that being absent from work two or more days per month or being off task 15% or more of the workday would be work preclusive. R. 94–95, 100.

In short, this Court cannot conclude that substantial evidence supports the mental RFC where the ALJ apparently rejected a limitation based on an erroneous reading of Dr. Arrington's opinions. *See Sutherland*, 785 F. App'x at 928; *Morales*, 225 F.3d at 317; *Cotter*, 642 F.2d at 706–07. Accordingly, this Court concludes that the decision of the Commissioner must be reversed and the matter must be remanded to the Commissioner for further consideration of the medical source opinions of Kim Arrington, Psy.D. *Cf. Zuschlag v. Comm'r of Soc. Sec. Admin.*, No. 18-CV-1949, 2020 WL 5525578, at *8 (D.N.J. Sept. 15, 2020) ("On remand, the ALJ may reach the same conclusion, but it must be based on a proper foundation."); *Jiminez v. Comm'r of Soc. Sec.*, No. CV 19-12662, 2020 WL 5105232, at *4 (D.N.J. Aug. 28, 2020) ("Once more, the ALJ did not provide an adequate explanation that would enable meaningful review, and the Court once more cannot determine what role lay speculation played in the ALJ's rejection of this detailed functional assessment from Dr. Marks."); *Cassidy v. Colvin*, No. 2:13-1203, 2014 WL 2041734, at *10 n.3 (W.D. Pa. May 16, 2014) ("Nevertheless, that the ALJ may have misinterpreted or misunderstood Dr. Kaplan's findings with regard to Plaintiff's postural activities does not absolve her of her error. Rather, it highlights the need for an ALJ to fully explain her findings. Otherwise, the district court is left to engage in this sort of speculation about how an ALJ arrived at her decision.").

## VI.  CONCLUSION

For these reasons, the Court **REVERSES** the Commissioner's decision and **REMANDS** the matter for further proceedings consistent with this Opinion and Order.

The Court will issue a separate Order issuing final judgment pursuant to Sentence 4 of 42 U.S.C. § 405(g).

**IT IS SO ORDERED.**


Date:  January 3, 2024                             *s/Norah McCann King*
                                                             NORAH McCANN KING
                                                     UNITED STATES MAGISTRATE JUDGE